IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| MICHAEL CUNNINGHAM, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 6:23-cv-03076-RK |
| COLONEL ERIC T. OLSON, | ) |
| Defendant. | ) |

# ORDER

This is an action challenging Colonel Eric T. Olson's retention and dissemination of expunged felony convictions in the Missouri State Highway Patrol's Criminal History Repository on behalf of Plaintiff Michael Cunningham and a putative class. Plaintiff alleges that Colonel Olson's acts or omissions violate his constitutional rights and the Brady Handgun Violence Protection Act ("Brady Act"), specifically 18 U.S.C. § 925A. Plaintiff also individually asserts a claim pursuant to 42 U.S.C. § 1983 for Colonel Olson's failure to train and violation of the Second Amendment based upon Plaintiff's unlawful arrest for being a felon in possession of a firearm.

Before the Court is Defendant Colonel Olson's motion to dismiss the second amended complaint for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 100.) Plaintiff opposes the motion. (Doc. 104.) Colonel Olson has not filed a reply brief and the time to do so has expired. Therefore, the Court considers the motion fully briefed. After careful consideration and for the reasons explained below, the Court **ORDERS** that Colonel Olson's motion to dismiss under Rule 12(b)(6) for failure to state a claim is **GRANTED in part** and **DENIED in part**.

## Background[1]

In November 2021, the Circuit Court of Christian County, Missouri, granted a judgment and order of expungement in favor of Plaintiff, expunging Plaintiff's November 2002 felony conviction for possession of a controlled substance under Missouri law. (Doc. 89 at ¶¶ 40, 41.)

---

[1] The facts in the background section are taken from Plaintiff's second amended complaint. (Doc. 89). The Court accepts the well-pleaded facts in the second amended complaint as true. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 821 (8th Cir. 2018).

On or about May 17, 2022, Plaintiff was driving to work on Interstate 44 when he was rear-ended by another vehicle. (*Id.* at ¶ 45.) Trooper Amanda Kahler responded, and while investigating the traffic accident, she observed a firearm in Plaintiff's vehicle. (*Id.* at ¶¶ 46, 48.) Trooper Kahler radioed Troop D to determine whether Plaintiff was disqualified from possessing a firearm. (*Id.* at ¶ 49.) The Troop D radio operator provided Trooper Kahler a copy of Plaintiff's criminal history report. (*Id.* at ¶ 50.) The criminal history report was generated from the Criminal History Repository, a database maintained by the Missouri State Highway Patrol which contains criminal history records. (*Id.* at ¶¶ 22, 51.) The Missouri State Highway Patrol is the sole agency responsible for maintaining the Criminal History Repository. (*Id.*)

As contained in the Criminal History Repository, the criminal history report Trooper Kahler received disclosed Plaintiff's prior 2002 felony conviction, but the report noted that the arrest, prosecution, and conviction were "** Closed Pursuant to Chapter 610 RSMo **." (*Id.* at ¶¶ 23, 52.) Plaintiff alleges that the Criminal History Repository differentiates expunged criminal convictions from unexpunged criminal convictions with this "small notation," and that it is used to advise Missouri State Highway Patrol troopers that the felony conviction has been expunged pursuant to § 610.140, RSMo. (*Id.* at ¶¶ 23, 53.) Yet, Trooper Kahler arrested Plaintiff for being a felon in possession of a firearm. (*Id.* at ¶ 57.)

Next, Plaintiff alleges that on November 17, 2023, he attempted to purchase a firearm but was denied when the required federal background check through the Federal Bureau of Investigation's ("FBI") National Instant Criminal Background Check System ("NICS") disclosed Plaintiff's prior felony conviction. (*Id.* at ¶¶ 33-35, 80-82.) When an NICS background check is completed, NICS searches the Interstate Identification Index ("III"). (*Id.* at ¶¶ 33-35.) III ties computerized criminal history records of the FBI and centralized files maintained by each participating state, such as the Criminal History Repository in Missouri, into a national system. (*Id.* at ¶¶ 7, 9, 10.) Thus, when an NICS background check is completed, it searches the III, which in turn accesses the Criminal History Repository maintained by the Missouri State Highway Patrol. (*Id.* at ¶¶ 33-34.) However, Plaintiff alleges that the federal databases do not have "regulations or administrative procedures that allow [the] programs to decipher the meaning of the notation used in Missouri's Criminal History Repository to denominate expunged criminal convictions, that is, "** Closed Pursuant to Chapter 610 RSMo **." (*Id.* at ¶ 23.) As a result, Plaintiff alleges that "background checks which access Missouri's Criminal History Repository identify and treat

expunged convictions just as [they do] felony convictions that have not been expunged." (*Id.*) Ultimately, Plaintiff alleges that Colonel Olson, as Superintendent of the Missouri State Highway Patrol, was "well aware that maintaining expunged felonies in the Criminal History Repository will result in a denial of a gun purchase" because the purchaser will fail the NICS background check required to purchase a firearm. (*Id.* at ¶ 37.)

On March 13, 2023, Colonel Olson removed this action to federal court and thereafter moved for dismissal of all claims for failure to state a claim.[2] (Docs. 1, 6.) In response, Plaintiff filed a first amended complaint as a matter of course pursuant to Rule 15(a)(1)(B), and the Court found the motion to dismiss moot. (Docs. 11, 13.) The first amended complaint asserted § 1983 claims against Colonel Olson and Trooper Kahler based solely on the arrest, as well as common law false arrest against Trooper Kahler.

On November 22, 2023, Plaintiff moved for leave to file a second amended complaint to assert new claims, including class claims and claims related to Plaintiff's November 17, 2023, firearm purchase. (Doc. 62.) Plaintiff sought to assert four new claims against Colonel Olson:

- Count One – against Colonel Olson in his official capacity on behalf of Plaintiff individually and a putative class seeking equitable relief to the extent the Missouri State Highway Patrol's practices and procedures regarding expunged criminal convictions in the Criminal History Repository violate the Second, Fourth, Fifth, and Eighth Amendments of the U.S. Constitution and Missouri's expungement statute;

- Count Two – against Colonel Olson in his individual capacity on behalf of Plaintiff individually and a putative class seeking damages under 42 U.S.C. § 1983 for violation of the Second Amendment regarding the Missouri State Highway Patrol's practices and procedures regarding expunged criminal convictions in the Criminal History Repository;

- Count Three – against Colonel Olson in his official capacity on behalf of Plaintiff individually and a putative class seeking relief under 18 U.S.C. § 925A for the denial of the purchase of a firearm based on erroneous information provided by the Missouri State Highway Patrol as to expunged criminal convictions disclosed through the Criminal History Repository; and

---

[2] Trooper Kahler was initially a named defendant; however, the Court granted summary judgment as to Trooper Kahler on qualified immunity grounds on April 10, 2024. (Doc. 88.)

- Count Five[3] – against Colonel Olson in his individual capacity on behalf of Plaintiff individually seeking damages under 42 U.S.C § 1983 based upon the Missouri State Highway Patrol's policies related to disclosure of expunged convictions and failure to train which resulted in a violation of Plaintiff's constitutional rights when he was arrested without probable cause given his expunged conviction.

Colonel Olson opposed, arguing that Plaintiff's motion for leave to amend should be denied because the proposed amendments were futile and because the timing and circumstances suggested a dilatory motive in seeking leave to amend. (Doc. 69.) The Court first rejected Colonel Olson's argument concerning dilatory motive. (Doc. 87.) Then, the Court engaged in an extensive analysis concerning whether the proposed amendments were futile, that is, whether they would withstand a motion to dismiss under Rule 12(b)(6). Ultimately, the Court granted in part and denied in part the motion for leave to amend, finding that only Plaintiff's proposed Count Two against Colonel Olson in his individual capacity was futile under the doctrine of qualified immunity. Therefore, Counts One, Three, and Five as stated above remain.

## Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accepts the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (cleaned up). In doing so, however, the Court is not bound to accept as true "legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (citation omitted).

## Discussion

Colonel Olson argues all three claims should be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6), primarily for the same reasons asserted in his

---

[3] Plaintiff sought to assert a fourth count against Trooper Kahler, only.

opposition to Plaintiff's motion for leave to file a second amended complaint.[4] (*See* Doc. 69.) The issues already considered by this Court are based on sovereign immunity as to Counts One and Three, qualified immunity as to Count Five, and failure to satisfy class certification requirements under Rule 23. (*See* Doc. 87 at 7-8, 13, 14-15.) The Court will not reconsider those arguments here. The only novel issue raised by Colonel Olson concerns Count Three.

Count Three alleges that Plaintiff was denied the ability to purchase a firearm as a result of erroneous information disclosed by the Missouri State Highway Patrol (at Colonel Olson's direction), in violation of 18 U.S.C. § 925A. Colonel Olson asserts that the foundation of Plaintiff's claim relies on allegations that he was "wrongfully denied a firearm due to the disclosure of erroneous information related to" his expunged felony conviction.[5] (Doc. 101 at 6.) However, Colonel Olson argues that the Missouri State Highway Patrol only disclosed accurate information, and Plaintiff is federally disqualified from firearm ownership because of his prior conviction. (*Id.*)

The Court first turns to Colonel Olson's assertion that Count Three fails as a matter of law because liability under 18 U.S.C. § 925A depends on Colonel Olson's dissemination of inaccurate information—yet only accurate information of Plaintiff's expunged conviction was disclosed.

***Effect of Expungement on Firearm Purchases***

An outline of the relevant statutes helps frame Plaintiff's claim. The United States regulates the manufacture and distribution of firearms through the Gun Control Act, 18 U.S.C. § 921, *et seq.*, and the Brady Act, 18 U.S.C. § 922, *et seq.* These acts prohibit certain categories of people, including those who are "under indictment for a crime punishable by imprisonment for a term exceeding one year" or who have "been convicted in any court of a crime punishable by imprisonment for a term exceeding one year," from shipping, transporting, or receiving firearms or ammunition. 18. U.S.C. § 922(g), (n) (cleaned up). 18 U.S.C. § 921(a)(20) sets forth exceptions to "crime[s] punishable by imprisonment for a term exceeding one year," none of which are

---

[4] Colonel Olson acknowledges that the Court has considered most of the arguments he raises, and he asserts them not for reconsideration, but for the purpose of preservation. (Doc. 69 at 1.)

[5] Colonel Olson fails to explicitly state which claims should be dismissed on this basis. To the extent Colonel Olson expects this argument to apply to all three claims, the Court rejects that notion. As previously noted in the Court's Order ruling on Plaintiff's motion for leave to file a second amended complaint, Colonel Olson does not explain how the accuracy of his disclosures or his contention that Plaintiff is still federally disqualified from firearm ownership has any bearing on Plaintiff's *constitutional* claims (Counts One and Five); rather, his argument solely focuses on Count Three (under 18 U.S.C. §925A).

applicable here. That section also provides: "What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20). Expungements are addressed:

> Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, *unless* such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

*Id.* (emphasis added).

As set out in the relevant federal statutes, the question of whether an expunged conviction is considered a conviction for purposes of firearm ownership under federal law is a two-step inquiry which, in Plaintiff's case, depends on Missouri law. First, Plaintiff received a judicial order of expungement of his felony criminal conviction pursuant to Chapter 610, RSMo., specifically § 610.140.7.[6] Thus, the Missouri State Highway Patrol recognizes that his conviction is "Closed Pursuant to Chapter 610 RSMo." Then, the second question is whether his expungement, under Missouri law, restored his firearm ownership rights comparable to those enjoyed by law-abiding citizens in Missouri (or in other words, whether § 921(a)(20)'s "unless" provision applies). *See United States v. Sonczalla*, 561 F.3d 842, 844 (8th Cir. 2009) (citing *Caron v. United States*, 524 U.S. 308, 314-15 (1998); *United States v. Collins*, 321 F.3d 691, 698 (8th Cir. 2003)) (noting that "for a person to have his civil rights restored . . . for the purposes of section 921(a)(20), the relevant state must actually have restored the felon's right to possess firearms," such that "[if] the applicable state law prohibits a person from possessing any type of firearm, then that person's civil rights have not been restored for purposes of § 921(a)(20)").

The legal effect of Plaintiff's order of expungement is primarily set out in § 610.140.8, RSMo., which provides:

> The order shall not limit any of the petitioner's rights that were restricted as a collateral consequence of such person's criminal record, and such rights shall be restored upon issuance of the order of expungement. For purposes of 18 U.S.C. 921(a)33(B)(ii) [sic], an order or [sic] expungement granted pursuant to this section shall be considered a complete removal of all effects of the expunged conviction. Except as otherwise provided under this section, the effect of such order shall be to

---

[6] All Missouri statutory references are to RSMo. 2016, as amended through the dates of Plaintiff's order of expungement in November 2021 and his attempted firearm purchase in November 2023.

restore such person to the status he or she occupied prior to such arrests, pleas, trials, or convictions as if such events had never taken place. . . .[7]

*Firearm Transaction Background Check Process*

Turning back to the federal statutory system for purchasing a firearm, firearms dealers are required to contact the FBI to conduct background checks of persons attempting to purchase firearms. 18 U.S.C. § 922(t)(1)-(2). The FBI utilizes NICS to conduct a search of three databases, one of which is III, for any records suggesting that the purchaser is prohibited from acquiring a firearm under federal or state law. 28 C.F.R. § 25.6(c)(1)(iii)-(iv).

Missouri participates in the National Crime Prevention and Privacy Compact ("Compact"), which facilities III as a decentralized system for exchanging criminal history records for noncriminal justice purposes among states and the federal government. *National Crime Prevention and Privacy Compact: Resource Materials*, NCJ 171671, Bureau of Just. Stats., U.S. Dep't of Justice (1998), https://bjs.ojp.gov/content/pub/pdf/ncppcrm.pdf [https://perma.cc/SL78-8AYP]. By participating in the Compact and III, Missouri agrees "to maintain detailed databases of [its] criminal history records, including arrests and dispositions, and to make them available to the Federal Government and to [other participating states] for authorized purposes."[8] 34 U.S.C. § 40316. In operation, the Missouri State Highway Patrol maintains the Missouri Criminal History Repository, and it makes those records available to III pursuant to the Compact and 34 U.S.C. § 40316. So, when NICS queries III, it in turn accesses the Missouri Criminal History Repository. (Doc. 89 at ¶¶ 33-34.)

Pursuant to the III regulations, "Criminal history record information maintained in the III System [] shall include serious and/or significant adult and juvenile offenses." 28 C.F.R. § 20.32(a). Notably, "criminal history record information" as defined is quite broad, and it encompasses much more than plain convictions. *See* 28 C.F.R. § 20.3(d) ("criminal history record information" consists of, among other things, "notations of arrests, detentions, indictments, informations, or other formal criminal charges, and any disposition arising therefrom, including acquittal, sentencing, correctional supervision, and release"); 28 C.F.R. § 20.3(j) ("disposition

---

[7] The statute does require that expunged offenses shall be disclosed in certain circumstances, such as "to any court when asked or upon being charged with any subsequent offense, violation, or infraction." § 610.140.8, RSMo.

[8] Though participation in III is voluntary on the national level, the Missouri general assembly has mandated Missouri's participation in the program. RSMo. § 43.542.

7

means information disclosing that criminal proceedings have been concluded and the nature of the termination, including," among *many* other things, that police elected not to refer a case to a prosecutor, a prosecutor elected not to commence proceedings, acquittals (including for by reason of insanity or mental incompetence), deferred dispositions, pardons, mistrials, determinations of "no paper," nolo contendere pleas, and the list goes on). It is the Missouri State Highway Patrol's responsibility "to assure that information on individuals is kept complete, accurate, and current so that all such records shall contain to the maximum extent feasible dispositions for all arrest data included therein." 28 C.F.R. § 20.37. To be clear, "[b]y placing records in the III [], [the Missouri State Highway Patrol] make[s] the information available for criminal justice purposes, not just firearm background checks." Douglas E. Lindquist, Assistant Dir., Crim. Justice Info. Servs. Div., FBI, *Statement Before the Senate Judiciary Committee*: *National Instant Criminal Background Check System (NICS)* (Dec. 6, 2017), https://www.fbi.gov/news/testimony/national-instant-criminal-background-check-system-nics [https://perma.cc/2GFB-AZCK].

After NICS conducts a query of III (and other databases), NICS thereafter issues a determination to the firearms dealer that the transaction may proceed, is denied, or is delayed. 28 C.F.R. § 25.6(c)(1)(iv) (NICS will issue a "'Denied' response when at least one matching record is found in either the NICS Index, NCIC, or III that provides information demonstrating that receipt of a firearm by the prospective transferee would violate 18 U.S.C. 922 or state law" and it will issue a "'Delayed' response if the NICS search finds a record that requires more research to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law.").

To summarize—NICS, in deciding if a firearms transaction may proceed, must determine whether: (1) the person has "been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" as defined by 18 U.S.C. §§ 921 and 922; (2) the person has had their conviction expunged or set aside, or the person has been pardoned or had their civil rights restored; and if so, (3) the legal effect in the jurisdiction which convicted the person is such that the individual's firearm ownership rights have been restored comparable to those enjoyed by law-abiding citizens in the jurisdiction. *See Van Der Hule v. Holder*, 759 F.3d 1043, 1045 (9th Cir. 2014) ("[T]he NICS examiner who processed the background check concluded that [the plaintiff's] prior convictions precluded him from receiving a Montana concealed weapons permit[.]"); *Brush v. United States*, No. 2:22 CV 32 DDN, 2023 WL 371826, at *6 (E.D. Mo. Jan. 24, 2023)

("Defendant [United States] erred in classifying plaintiff's conviction as a misdemeanor crime of domestic violence which has prevented him from obtaining a firearm in violation of 18 U.S.C. § 925A."); *Ross v. ATF*, 903 F. Supp. 2d 333, 341 (D. Md. 2012) ("The pawn shop called the NICS Section, which initiated a background check, looked at the [] North Carolina criminal record . . . , returned a 'Delayed' response, then inexplicably changed the 'Delayed' response to 'Denied.' Instead, the NICS Section should have told All Pawn to 'Proceed' with the transaction, since the available information 'did not demonstrate that the transfer of the firearm would violate federal or state law.'"); *Siperek v. United States*, 270 F. Supp. 3d 1242, 1245 (W.D. Wash. 2017) ("NICS reviewed Plaintiff's background information and decided that, regardless of the April 29, 2016 court order restoring Plaintiff's rights to possess a firearm, the order could not be applied to Plaintiff's juvenile class A felony conviction for Child Molestation.").

### *Judicial Review of Firearm Denial*

Finally, that brings the Court to the statutory provision Plaintiff sues under. When a person denied a firearm pursuant to 18 U.S.C. § 922 either (1) "due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by [NICS]" or (2) "who was not prohibited from receipt of a firearm pursuant to" 18 U.S.C. § 922(g), they may sue the State or political subdivision "responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be." 18 U.S.C. § 925A.

Plaintiff brings Count Three against Colonel Olson under the first option to contest the denial of a firearm under 18 U.S.C. § 925A—the provision of erroneous information by Colonel Olson of the Missouri State Highway Patrol. Plaintiff alleges that he was denied the ability to purchase a firearm after NICS completed its search, wherein it utilized III (and in turn the Missouri State Highway Patrol's Criminal History Repository), because the Missouri State Highway Patrol disclosed his prior felony conviction. Plaintiff asserts that this disclosure constituted "erroneous information within the meaning of 18 U.S.C. 925A." (Doc. 89 at ¶¶ 33-35, 80-82, 122.) However, as acknowledged by Plaintiff, what the Missouri State Highway Patrol actually disclosed was that Plaintiff's conviction was "** Closed Pursuant to Chapter 610 RSMo **" (the chapter which contains Missouri's expungement statute, including the legal effect of such expungements). That information provided by the Missouri Criminal History Repository (and III) was correct. As

9

discussed above, after receipt of this notation, NICS should then conduct a cross-reference to Chapter 610 RSMo. for purposes of determining whether Plaintiff's order of expungement had restored his firearm ownership rights comparable to those enjoyed by law-abiding citizens in Missouri (in other words, whether § 921(a)(20)'s "unless" provision applies).

Thus, the crux of Plaintiff's claim is that NICS failed to decipher the notation indicating that his conviction had been expunged under Missouri law, and therefore any violation of 18 U.S.C. § 925A falls under the second basis for disputing his denial—that he was not actually prohibited from receipt of a firearm under 18 U.S.C. § 922(g) or (n). Plaintiff seems to acknowledge this, as he pleads that NICS does not have "regulations or administrative procedures that allow [the] program[] to decipher the meaning of the notation used in Missouri's Criminal History Repository to denominate expunged criminal convictions, that is, '**Closed Pursuant to Chapter 610 RSMo**.'"[9] (*Id.* at ¶ 23.) Plaintiff's claim, if any, lies not against Colonel Olson, but against the United States in its administration of NICS because the effect of the closure of his conviction pursuant to § 610.140, RSMo., purportedly restored his right to purchase a firearm; moreover, that the information provided by the Missouri Criminal History Repository may have even supported this restoration. *See* 18 U.S.C. § 925A ("Any person denied a firearm . . . (2) who was not prohibited from receipt of a firearm pursuant to . . . section 922[] may bring an action against . . . the United States, as the case may be, for an order directing . . . that the transfer be approved[.]"); Mo. Rev. Stat. § 610.140.8. This procedure is supported by the regulation setting forth the process for appeal of a denial:

> If the individual wishes to challenge the accuracy of the record upon which the denial is based, *or if the individual wishes to assert that his or her rights to possess a firearm have been restored*, he or she may make application first to the denying agency, i.e., [] the FBI. If the [FBI] is unable to resolve the appeal, the denying agency will so notify the individual and shall provide the name and address of the agency that originated the document containing the information upon which the denial was based. The individual may then apply for correction of the record directly to the agency from which it originated.

---

[9] Even if it is true that NICS does not have a process by which it *automatically* deciphers the meaning of the notation, NICS does have a regulatory framework in place to explore the meaning of the notation. *See* 28 C.F.R. § 25.6(c)(1)(iv)(B) (NICS will issue a "'Delayed' response, if the NICS search finds a record that requires more research to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law.").

28 C.F.R. § 25.10(c) (emphasis added).

In fact, the cases located by this Court which have considered denials of firearm purchases based upon expunged offenses pursuant to 18 U.S.C. § 925A are consistently initiated against the United States (or agency responsible for denying the transfer), asserting the second basis under § 925A, that the individual was not actually prohibited from owning a firearm because their rights had been restored or because the offense did not constitute a conviction under 18 U.S.C. §§ 921 and 922. *See Van Der Hule*, 759 F.3d at 1045; *Brush*, 2023 WL 371826, at *6; *Bartz v. FBI*, No. 19-1577 (NEB/BRT), 2020 WL 7211060, at *2 (D. Minn. Oct. 26, 2020); *Siperek*, 270 F. Supp. 3d at 1243; *Enos v. Holder*, 855 F. Supp. 2d 1088, 1090 (E.D. Cal. 2012); *see also Smith v. United States*, No. 21-cv-1574 (ECT/ECW), 2021 WL 5216907, at *1 (D. Minn. Nov. 9, 2021) (Prospective gun-purchaser sued United States seeking "correction of allegedly erroneous information in [NICS] that [he said] resulted in an improper prohibition on his right to possess a firearm." However, purchaser did not actually allege that NICS *provided* the erroneous information (as is the case present against Colonel Olson), but NICS denied his purchase based on allegedly erroneous information contained in the system).

Accordingly, the Court concludes that Plaintiff fails to state a claim for disclosure of erroneous information sufficient to support his 18 U.S.C. § 925A claim against Colonel Olson. Given this conclusion, Count Three fails as a matter of law, and the Court need not consider the second portion of Colonel Olson's argument (whether Plaintiff is federally disqualified from firearm ownership because of his prior conviction).

Colonel Olson's motion as to Count Three is **GRANTED**.

## Conclusion

After careful consideration and for the reasons explained above, the Court **ORDERS** that Colonel Olson's motion to dismiss under Rule 12(b)(6) for failure to state a claim is **GRANTED** as to Count Three and is **DENIED** in all other respects.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: October 21, 2024